## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

LADARIEN DARNELL MCWHORTER,

      Petitioner,

v.                                                    Case No. 4:21-cv-10-WS/MJF

SECRETARY, DEPARTMENT OF
CORRECTIONS, STATE OF FLORIDA,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Ladarien Darnell McWhorter, proceeding with counsel, has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 5. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 9. McWhorter replied. Doc. 17. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that McWhorter is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY[2]

On July 9, 2012, Investigator Laura Varble, working undercover with the Special Victim's Unit of the Tallahassee Police Department, posted an advertisement on the internet site "Craigslist" as part of her duties of conducting sting operations aimed at identifying people who would prey on children.[3] Officer Varble's persona was a 14-year old female named "Selina." The advertisement was titled, "FrEsh_hott lAtInA - w4m (Tallahassee)," with the subject of the post stating "here and lookn 4 a teacher . . . who can help me learn???" Ex. 10 at 2.[4]

McWhorter responded to the advertisement, and the following email exchange occurred:

> McWhorter: What would u like to learn I can teach u anything u wann kno if u still looking let me kno
>
> "Selina" [Investigator Varble]: well i m a yunger girl…lookn 2 learn since i have not done much. u down wit being by teacher then let me know :)

---

[2] The facts are drawn from the evidence presented at McWhorter's second trial, viewed in the light most favorable to the State. Doc. 9, Ex. 9 (Trial Tr.), Ex. 10 (Trial Exs.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

[3] Officer Varble's surname was "Gereg" at the time of McWhorter's arrest.

[4] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 9. The citation references the exhibit number followed by the relevant page number. If a page of an exhibit bears more than one page number, the court cites the number appearing at the top left corner of the page.

McWhorter: Yes I will teach u text me xxx-xxx-xxxx

Ex. 10 at 4-6 (Tr. Ex.); Ex. 9 at 46 (Varble Test.).

The communications between McWhorter and Varble's persona continued via

text:

"Selina": hey so what up

McWhorter: Nothing much relaxing. What up with u

"Selina": bored as hell. So u cool wit me being kinda…fresh I guess? not much exp u kno

McWhorter: Yes I'm fine with that can I get pics of u. what all do u wanna learn

"Selina": well i m almost 15 and wanna learn a few things bf i go bk to school u know? wanna feel confident i guess?

"Selina": yes I have a pic but gotta email if u want it…kinda got in trouble with pic msging

McWhorter: U can email them well I will teach u anything so u can be confident

"Selina": u aint gonna do nuthn with my pics rt? i don't want my pic out there cuz I go to HS here so…

"Selina": long as u aint a crepper lol

McWhorter: I'm not goin to do anything with them I promise which hs u go to

"Selina": uh, y? I dont know if I need 2 tell u all that…yet lol

McWhorter: Lol I went to Leon I was just wondering

McWhorter: What exp do u have

"Selina": that funny…lets just say my HS is ur arch rival…hahaha

"Selina": not a whole lot…what u offern lol

"Selina": u get my pic yet?

McWhorter: O lol. No I haven't got it yet. I have lots of exp I'm just trying to figure out what to teach u. When would u like to meet up

McWhorter: Are u still a virgin?

"Selina": no but i only did it twice n was not good lol…maybe it was just him

McWhorter: Lol it mite have been. Did u wanna meet up tonite

"Selina": I mite b able. sneak out . . .? whatcha wanna do?

"Selina": sent u my pic bb

McWhorter: I got u pic u r cute

McWhorter: We can hang out and get to kno each other a little better and I can test u to see where u are. U want me to email it or text it to u?

"Selina": thx

"Selina": whatcha mean?

McWhorter: About which part

"Selina": the test lol

McWhorter: Test u sexually if u r ready for that. Did u want me to text u a pic of me or email it to u

"Selina": oh u gotta email cuz I told u idont get pic msgs nymore :(

"Selina": well this all kinda new to me so I guess I wanna know what the test will be???

McWhorter: What did u do to get that taken away lol

"Selina": well…I may have gotten caught sendin a pic I shouldnt have sent lol thats all

McWhorter: Just a first time sex to see where your exp is

McWhorter: What kinda pic was that

"Selina": y it matter what kinda pic, ha…u can guess lol

McWhorter: I'm curious lol and I may wanna see that pic

McWhorter: I just sent u a pic

"Selina": haha . . . u think I still have pic? hell no…that shit got deleted when the phone was taken

"Selina": wow! nice body :)

McWhorter: Lol wow that must have been a great pic u sent

McWhorter: Thanks I work out

"Selina": lmao…don't know bout that lol

McWhorter: Well describe this pic lol

"Selina": well…I aint gonna describe, a lil shy but my bf at time convinced me to send

McWhorter: Y are u shy. That's one thing we need to work on is u being shy lol

"Selina": how u plan on workn on that lol

McWhorter: I will figure a way to fix that lol

McWhorter: So what all did u do with yo ex bf

"Selina": y u want me 2 do all tlkn…I was lookn 4 sum1 to teach me…jeez

McWhorter: Lol just making conversation. Are u going to be able to get out tonite?

"Selina": depends…

McWhorter: On

"Selina": what r plans r? if i m gonna risk sneakin out or gettn in trouble wit moms…its gotta be worth it

McWhorter: Let u learn to take it deep learn to give head and show u a few tricks it will be well worth it unless u wanna do something now

McWhorter: Are u into anal

"Selina": if i did sumthn now, I would have to b home by like 6 but…later I would have more time

"Selina": no way…barely done it the rt way…whoa

McWhorter: Ok we can do something now and later

McWhorter: Lol just checking

McWhorter: I can have u back by 6 u want me to come get u and then we can hook up later

"Selina": that b fun…i dont have a car tho :(

McWhorter: I will come get u where u want me to pick u up at

"Selina": hmmm…lemme call my mom n get a bs excuse to make sure she aint comn home early 4 any reason

McWhorter: Ok just let me kno

"Selina": k i m gonna need 2 shower 1st lol

McWhorter: Lol ok which side of town do u live on so I can be close for when u r ready

"Selina": n i was just thinkn about the whole takn it deep thing…don't know if i can do that? u think?

McWhorter: I think u can handle it have confidence

"Selina": well i aint got much know how so i m kinda worried it will hurt if u big u know?

McWhorter: U will be fine it wont hurt

"Selina": nywy i live near tall mall. U?

McWhorter: I live near tmh

"Selina": cool :)

McWhorter: Yea so I'm kinda close to u. U call yo mom yet

"Selina": I just got off the phone wit her…she going to like happy hr or sumthn rt after so I have even longer…ha

McWhorter: Ok cool let me kno when u ready

"Selina": k gonna jump in shower now:)

McWhorter: Ok

McWhorter: Ready?

"Selina": just gettn dressed…had to shave lol

McWhorter: Lol where u want me to get u from

"Selina": um …. tryn to think what wud be easiest round here …..

McWhorter: Ok

McWhorter: I'm at the mall waiting

"Selina": k ftnishn up wit a phone call quick

"Selina": sorry i m hurryn :( one last ck wit mom u know 2 try n figure my time

McWhorter: Ok

McWhorter: Ok

"Selina": ok…got that taken care of..u got protection rt bb?

McWhorter: Yes I do

"Selina": good…cuz i aint tryn to get knocked up lol

McWhorter: Lol I'm not trying to have kids yet

"Selina": hahahaha…sorry didnt mean that but don't want no accidents either

McWhorter: Where am I getting u at

McWhorter: I understand completely

"Selina:: gimme a few cuz gonna try n get to u at mall by walkn or near there…walkn now

McWhorter: Ok I can pick u up its hot outside

"Selina": who u telln…let me get outta my neighborhood first…to many nosy ppl

McWhorter: Ok lol

"Selina": so where we gonna go? u got ur own place or…

McWhorter: I do but my room mates just got home and they have ppl all in the house cuz somebody took forever

"Selina": sorry what can I say so where we supposed to go

McWhorter: I kno a few places where u at

"Selina": almost up to north monroe st

McWhorter: From which direction

"Selina": dunno my damn directions lol…from tharpe i guess

McWhorter: Ok

McWhorter: Meet me in the plaza with that 24 hour fit ness place

"Selina": kk, just meet me behind el jalisco cuz it will be easier

McWhorter: Ok

"Selina": how will i know where u r

McWhorter: I'm in a black Toyota Avalon

"Selina": cool :)

McWhorter: See u in a min

"Selina": yay

McWhorter: I'm behind the building

"Selina: k boo

Ex. 10 at 7-10, 11-14, 16-18 (Tr. Exs.); Ex. 9 at 49-69 (Varble Test.).

When McWhorter became explicit with Varble's persona, Varble notified her superior who assembled a team of officers to arrest McWhorter. Ex. 9 at 66. McWhorter was arrested behind the El Jalisco restaurant. *Id*. at 69. The arrest team found condoms in McWhorter's vehicle (including in his wallet) and a receipt showing that the condoms were purchased that day. *Id*. at 136-39.

Varble interviewed McWhorter after his arrest. In the interview, McWhorter acknowledged that he "did something very stupid," which was to talk to, and "[p]robably have sex with" what he described as a "15-year-old girl." *Id*. at 73-74. McWhorter gave some detail about the Craigslist advertisement and the email and text-message exchanges, including that they discussed sex. *Id*. at 74-80. McWhorter also admitted that he bought the condoms for his meeting with the girl. *Id*. at 87.

In Leon County Circuit Court Case No. 2012-CF-2221, McWhorter was charged with two crimes: (1) using a computer or Internet service to seduce, solicit, lure, or entice a child—or person believed by the defendant to be a child—to engage in unlawful sexual conduct (including attempt), in violation of Section 847.0135(3)(a), Florida Statutes (Count 1 – "Unlawful Use of a Computer Service to Solicit or Lure a Child"); and (2) traveling to meet a child—or person believed by

the defendant to be a child—to engage in unlawful sexual conduct after using a computer or Internet service to seduce or entice the child to engage in unlawful sexual conduct (including attempt), in violation of Section § 847.0135(4)(a), Florida Statutes (Count 2 – "Traveling to Meet a Minor"). Ex. 2.

McWhorter was tried in 2014, but the jury was unable to reach a verdict. *See* Ex. 8 at 1. At McWhorter's second trial, in 2017, the State nolle prossed Count 1. Ex. 9 at 7. McWhorter presented an entrapment defense.

The jury was instructed on the elements of the charged crime and on Florida's "subjective" entrapment defense codified in Fla. Stat. § 777.201. Ex. 9 at 258-61; *see also Munoz v. State*, 629 So. 2d 90, 99-100 (Fla. 1993). The jury found that McWhorter was not entrapped, and that the State proved beyond a reasonable doubt all of the elements of Traveling to Meet a Minor, as charged. Ex. 9 at 270; Ex. 11.

The trial court adjudicated McWhorter guilty and sentenced him to 21 months of imprisonment followed by 5 years on sex offender probation. Ex. 11. The Florida First District Court of Appeal ("First DCA") affirmed the judgment *per curiam* and without written opinion. *McWhorter v. State*, No. 1D18-1353, 280 So. 3d 11 (Fla. 1st DCA Oct. 10, 2019) (Table) (copy at Ex. 15).

McWhorter filed his counseled federal habeas petition on February 24, 2021. Doc. 1. McWhorter's amended petition raises two claims of trial court error. Doc. 5. The State asserts that McWhorter is not entitled to habeas relief because (1) his

claims raise purely state law issues that are not cognizable on federal habeas review; and (2) even if cognizable, McWhorter fails to satisfy § 2254(d)'s demanding standard for habeas relief. Doc. 9.

## II.  Governing Legal Principles

### A.    Claims Cognizable on Federal Habeas Review

Federal habeas relief is available to correct only constitutional injury. 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (internal quotation marks and citations omitted)). "[F]ederal habeas corpus relief does not lie for errors of state law. . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) ("The writ of habeas corpus was not enacted to enforce State-created rights."); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law rarely raise issues of federal constitutional significance, because a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." (internal quotation marks and citation omitted)).

**B.**   <u>**Section 2254 Standard of Review**</u>

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[5] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

---

[5] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). Federal courts also must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . .  because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III. DISCUSSION

**Ground One**    **"The state trial court erred by denying Petitioner McWhorter's motion to dismiss and/or motion for a judgment of acquittal on the basis of entrapment." Doc. 5 at 7.**

McWhorter asserts that the trial court erred when it denied his motion to dismiss and motions for judgment of acquittal asserting that the evidence established the defense of entrapment as a matter of law. Doc. 5 at 7-18. For context, Florida recognizes two "entrapment" defenses: one grounded in the due process clause of article I, section 9, of the Florida Constitution, and the other grounded in section 777.201, Florida Statutes. *See Munoz*, 629 So. 2d at 98-100.[6]

---

[6] In *Munoz*, the Florida Supreme Court noted:

> Although the United States Supreme Court has yet to determine in a case before it that the conduct of law enforcement agents in an entrapment case has violated federal due process rights, it has determined that law enforcement agents' conduct could, in fact, violate such rights. *See Russell*. On the other hand, . . . we have determined, under the circumstances in *Glosson*, that the conduct of law

The Florida Supreme Court has explained that, "[i]n the presence of egregious law enforcement conduct, an entrapment defense is to be evaluated under the due process provision of article I, section 9, of the Florida Constitution as in *Glosson* and *Williams*." *Munoz*, 629 So. 2d at 99 (citing *Glosson, supra,* and *State v. Williams,* 623 So. 2d 462 (Fla.1993)). The due process analysis under the Florida Constitution applies Florida's "general principle of law that prohibits prosecutions brought about by methods offending one's sense of justice." *Munoz*, 629 So. 2d at 98 (discussing *Williams*, 623 So. 2d at 465).

In the absence of egregious law enforcement conduct, "the subjective test set forth in section 777.201 [Florida Statutes] is the test to be applied on the issue of entrapment." *Munoz*, 629 So. 2d at 99. This subjective test "focuses on the issues of inducement and the defendant's predisposition." *State v. Blanco*, 896 So. 2d 900, 901 (Fla. 4th DCA 2005); *Munoz*, 629 So. 2d at 99-100.

Prior to McWhorter's second trial in 2017, the defense filed a motion to dismiss. Ex. 5. McWhorter's legal memorandum identified "the two types of entrapment" recognized by Florida law, and set forth the standard applicable to each

---

enforcement agents violated the due process clause of the Florida Constitution.

*Munoz*, 629 So. 2d at 98 (citing *United States v. Russell*, 411 U.S. 423 (1973), and *State v. Glosson*, 462 So. 2d 1082 (Fla. 1985)).

type. *Id*. at 4-5. McWhorter's argument, though, was confined to "subjective" entrapment. He asserted that the trial court could decide the issue of entrapment as a matter of law because the undisputed evidence satisfied "the legal definition of entrapment set out in section 777.201, Florida Statutes." Ex. 5 at 7-8. McWhorter cited and discussed exclusively state-law cases applying Florida's "subjective" test. *Id*. at 6-8. McWhorter made no mention of the United States Constitution.

The state trial court held a hearing on McWhorter's motion to dismiss. Ex. 6 (Hr'g Tr.), Ex. 7 (Hr'g Exs.). The trial court denied the motion for these reasons:

> The Defendant, Ladarien McWhorter, through his attorney, filed a motion to dismiss the two count Information that charges him with Unlawful Use of a Computer Service to Solicit or Lure a Child and Traveling to Meet a Minor. The Defendant argues in the motion and in the accompanying memorandum that the stipulated evidence establishes as a matter of law the affirmative defense of subjective entrapment. Defendant alleges that Florida Statute 777.201(2) mandates that the charges against him be dismissed. The Court disagrees and denies Defendant's Motion to Dismiss.

> In reaching this decision, the Court carefully reviewed all of the evidence provided, considered all of the cases submitted and noted the concession by the State that it has no evidence of the Defendant's predisposition to engage in the alleged criminal conduct. The Court also considered the fact that this case was tried to a jury and that the jury was instructed on entrapment. The jury could not reach a verdict. The jury could have deadlocked over whether the State proved its case in chief beyond a reasonable doubt. Given the nature of the evidence, however, it is more likely that the jury could not agree on the entrapment defense which the Defendant had to prove by the standard of preponderance of the evidence. The jury's inability to reach a verdict gives strong weight to [the] argument that the entrapment defense is a question for the finder of fact and not the Court.

> Denying this motion does not preclude the Defendant from presenting the issue of entrapment to the jury at the re-trial of this case and requesting a jury instruction on Entrapment for the jury to consider.

Ex. 8.

At trial, McWhorter moved for a judgment of acquittal both after the State rested and at the close of all of the evidence. Ex. 9 at 141-43, 200. Defense counsel argued:

> Even viewing the evidence in the light most favorable to the State I would suggest that they haven't made a prima facie case that, No. 1, the defendant solicited the officer. I think the clear indication from the fact that the officer posted the ad in a sex forum looking for sex is that she was soliciting the defendant. She encouraged the defendant all along the way to continue the communications, calling him baby, sending him smiley faces, telling him that he had a great body. There's not [sic] mistake about what she wanted to have happen.

> She admitted on cross-examination that the purpose of communicating -- of continuing communications was ultimately to do what is indicated in the ad heading, which was to meet up. And we're talking about traveling to meet a minor here.

> So, given that, I would suggest that the evidence doesn't meet a prima facie case that Mr. McWhorter solicited the officer.

> I would also suggest that there's insufficient evidence that he believed that the officer was actually 15. And, on that basis, I would ask the Court to grant a judgment of acquittal.

Ex. 9 at 141-42. Defense counsel later renewed his motion "on the same grounds argued before," adding that, "the State has not introduced any evidence inconsistent

with the defense theory of the case, which is entrapment." *Id*. at 200. The trial court denied both motions, explaining: "[I]t's a jury question." *Id*. at 143, 200.

On direct appeal, McWhorter challenged the trial court's denial of his motions to dismiss and for judgment of acquittal. Ex. 12. McWhorter claimed that he satisfied both of Florida's standards for entrapment. *Id*. at 13-28. McWhorter's briefing of the entrapment issue began and concluded with quotations from *Sherman v. United States*, 356 U.S. 369 (1958), and *Sorrells v. United States*, 287 U.S. 435, 442 (1932), both of which deal with the federal statutory defense of entrapment, as discussed more fully below. Ex. 12 at 13, 27.

In discussing Florida's "objective entrapment" standard "under the due process provision of article I, section 9, of the Florida Constitution," Ex. 12 at 25, McWhorter relied on state-law cases to argue that Investigator Varble violated his "due process rights." *Id*. at 26. McWhorter closed his "objective entrapment" discussion by stating that he was entitled to acquittal "based on substantive due process/objective entrapment." *Id*. at 27. The First DCA affirmed McWhorter's conviction without explanation. Ex. 15.

McWhorter's federal habeas petition makes the same arguments as his direct appeal brief. Doc. 5 at 7-18. In response to the State's assertion that his claim is not cognizable on federal habeas because it does not involve a federal constitutional question, McWhorter characterizes his direct appeal brief and habeas petition as

"argu[ing] that the state court's rulings violated his federal constitutional rights."

Doc. 17 at 1, n. 1.

**A.    McWhorter Is Not Entitled to Habeas Relief on His Claim of "Entrapment" Because It Raises Purely State-Law Issues**

As in state court, McWhorter's claim here raises purely state law questions of

whether he satisfied Florida's subjective and objective standards governing claims

of entrapment. McWhorter confines his argument, almost exclusively, to state-law

cases applying Florida's standards for entrapment. Doc. 5 at 7-18.

The only time McWhorter makes more than a passing reference to federal law

is in his introduction and conclusion, where he quotes *Sorrells, supra*, and *Sherman, supra*. Doc. 5 at 7, 18. McWhorter opens with this quotation from *Sherman*:

> The function of law enforcement is the prevention of crime and the
> apprehension of criminals. Manifestly, that function does not include
> the manufacturing of crime. Criminal activity is such that stealth and
> strategy are necessary weapons in the arsenal of the police officer.
> However, "[a] different question is presented when the criminal design
> originates with the officials of the government, and they implant in the
> mind of an innocent person the disposition to commit the alleged
> offense and induce its commission in order that they may prosecute."
> The stealth and strategy become as objectionable police methods as the
> coerced confession and the unlawful search. Congress could not have
> intended that its statutes were to be enforced by tempting innocent
> persons into violations.

356 U.S. at 372 (quoting *Sorrells*, 287 U.S. at 442). McWhorter's conclusion recites

the same quotation from *Sorrells*. Doc. 5 at 18.

i. ***McWhorter's Claim of Entrapment under Section 777.201, Fla. Stat., and the United States Supreme Court's Decisions in Sorrells and Sherman, Does Not Raise a Question of Constitutional Dimension***

The quoted language from *Sherman*, above, is the Supreme Court's explanation for recognizing—*as a matter of statutory construction*—a defense of entrapment in the federal courts that focuses on the predisposition of the defendant to commit the crime. *See Russell*, 411 U.S. at 428-29 (explaining *Sorrells* and *Sherman*). The last sentence of the quoted language makes clear that the federal defense of entrapment is grounded in statutory interpretation. *Sherman*, 356 U.S. at 372 ("*Congress could not have intended* . . ." (emphasis added)). Even if not clear, the Supreme Court clarified in *Russell*, that the defense of entrapment established in *Sorrells* and applied in *Sherman* "is not of a constitutional dimension." *Russell*, 411 U.S. at 433; *see also id.* at 432-33 (referring to the defense of entrapment as "nonconstitutional").[7]

---

[7] Lower federal courts also recognize this point. *See Sosa v. Jones*, 389 F.3d 644, 645 (6th Cir. 2004) ("[T]he Supreme Court has not yet recognized a constitutionally required entrapment defense."); *Vega v. Suthers*, 195 F.3d 574, 583 (10th Cir. 1999) ("The Supreme Court has long recognized that the defense of entrapment 'is not of a constitutional dimension.'" (quoting *Russell*, 411 U.S. at 433)); *United States v. Garcia*, 562 F.2d 411, 415 (7th Cir. 1977) (same); *Ainsworth v. Reed*, 542 F.2d 243, 244 (5th Cir. 1976) ("[T]he Supreme Court [in *Russell*] expressly rejected a plea to raise to a constitutional status the doctrine of entrapment as a defense."); *Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 35 (11th Cir. 2012) ("It is well-settled that the defense of entrapment is not of constitutional dimension." (citing *Russell*, 411 U.S. at 433)).

When the Florida legislature established a statutory defense of entrapment in Fla. Stat. § 777.201, it codified the "subjective" standard adopted by the United States Supreme Court for the federal statutory defense of entrapment. *See Munoz*, 629 So. 2d at 99. As in *Sorrells*, Florida's statutory defense of entrapment focuses on the defendant's predisposition to commit the crime. *Munoz*, 629 So. 2d at 99-100.

Because neither Florida's entrapment defense under Fla. Stat. § 777.201, nor the federal defense of entrapment recognized in *Sorrells*, is constitutional in nature, McWhorter's claims for relief under these authorities is not cognizable on federal habeas review. *Swarthout*, 562 U.S. at 219; *Estelle*, 502 U.S. at 67-68 ("We have stated may times that federal habeas corpus relief does not lie for errors of state law. . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").[8]

    **ii.**    ***McWhorter's Claim of "Objective Entrapment" Based on "Egregious Law Enforcement Conduct" Does Not Raise a Claim of Federal Constitutional Dimension***

---

[8] Other federal courts are in accord. *See, e.g., Sosa*, 389 F.3d at 647 ("Because the Supreme Court precedent that formulated the defense of entrapment [*Sorrells*] does not rely on due process, . . . Mr. Sosa's petition for a writ of habeas corpus must be denied."); *Ainsworth*, 542 F.2d at 244-45 (holding that because entrapment is not a constitutional doctrine, "a writ of habeas corpus could not issue" on petitioner's claim that the jury's verdict of no entrapment was against the great weight of evidence); *Garcia v. Bravo*, 199 F. App'x 692, 694 (10th Cir. 2006) (denying a certificate of appealability on petitioner's claim that the Constitution entitled him to an acquittal because of evidence of entrapment; explaining that the defense of entrapment is not of a constitutional dimension).

McWhorter's claim of "objective entrapment" discusses Florida courts' application of Florida's objective standard for evaluating whether law enforcement conduct violates the due process provision of article I, section 9, of the Florida Constitution. Doc. 5 at 16-17 (discussing state law and state cases). The state court's alleged erroneous application of Florida law to McWhorter's claim of objective entrapment provides no basis for federal habeas relief. "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Cabberiza*, 217 F.3d at 1333.

McWhorter's counseled petition does not explicitly claim that his conviction violates the Due Process Clause of the United States Constitution. McWhorter does not label his claim as a federal due process claim. McWhorter does not identify a legal standard for analyzing a federal due process claim, much less apply a federal standard to the facts of his case. McWhorter's analysis is based exclusively on state law.

The only time McWhorter mentions the United States Constitution is when he cites the Fourteenth Amendment as additional source material for Florida's recognition of an objective entrapment defense under the Florida Constitution. *See* Doc. 5 at 16. Specifically, McWhorter states:

> [I]n the presence of egregious law enforcement conduct, an entrapment defense is [also] to be objectively evaluated under the due process provision of article I, section 9, of the Florida Constitution."

> *Curry v. State*, 876 So. 2d 29, 30 (Fla. 4th DCA 2004) (citing *Munoz*, 629 So. 2d at 91). *See also* U.S. Const. amend. XIV.

Doc. 5 at 16 (alteration adopted) (citing *Munoz, supra*). McWhorter's citation to the Fourteenth Amendment—in the context of discussing his claim of "substantive due process/objective entrapment" under the Florida Constitution—does not adequately present a due process claim under the United States Constitution. *See Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (defining a claim for habeas relief as "an allegation of a constitutional violation."); *Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013) (requiring a habeas petitioner to "present a claim in clear and simple language such that the district court may not misunderstand it."). This court is not required to liberally construe a counseled petition.

McWhorter's claim that the First DCA erred in rejecting his state-law claim of "objective" entrapment under Florida's due process clause provides no basis for federal habeas relief.

### B. Even Construing McWhorter's Claim of "Objective Entrapment" as a Federal Due Process Claim of Outrageous Law Enforcement Conduct, He Still Is Not Entitled to Habeas Relief

Even assuming to McWhorter's benefit (without deciding) that his single, perfunctory citation to the Fourteenth Amendment and his use of the phrase "substantive due process/objective entrapment" sufficiently pleaded—both here and in the First DCA—an independent claim for relief under the Due Process Clause of

the United States Constitution, he still is not entitled to habeas relief. The First DCA's summary affirmance would be considered an "adjudication on the merits" of that claim subject to review under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *Id.*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

The Eleventh Circuit has recognized a "potential defense" in the federal courts that "focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition." *United States v. Cannon*, 987 F.3d 924, 941 (11th Cir. 2021) (citing *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998)). This potential defense "is based on the Supreme Court's recognition of the possibility that law enforcement's tactics may be 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *Cannon*, 987 F.3d at 941 (quoting *Russell*, 411 U.S. at 431-32).

In *Russell*, a defendant convicted of a federal drug offense claimed that a drug enforcement officer's involvement in the drug manufacturing enterprise was so high

that a criminal prosecution for the drug's manufacture violated due process principles. *Russell*, 411 U.S. at 430. The defendant admitted that he was predisposed to commit the crime, but urged the Supreme Court to adopt a "constitutional rule" that would "preclude any prosecution when it is shown that the criminal conduct would not have been possible had not an undercover agent supplied an indispensable means to the commission of the crime that could not have been obtained otherwise, through legal or illegal channels." *Russell*, 411 U.S. at 431. The Supreme Court rejected the proposed constitutional rule, stating:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, the instant case is distinctly not of that breed. . . . The law enforcement conduct here stops far short of violating that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment.

411 U.S. at 431-32 (internal quotation marks and citations omitted). To date, the Supreme Court has not held in a case before it that law enforcement's involvement in a criminal scheme was so outrageous that the Due Process Clause absolutely barred the government from invoking the judicial process to convict the defendant. *See Cannon*, 987 F.3d at 941 ("Our Circuit has caselaw analyzing outrageous government conduct claims, although this defense has never succeeded here or in the Supreme Court.").

Because the United States Supreme Court has not addressed a claim precisely like McWhorter's—or ruled on a "materially indistinguishable" set of facts, *Williams*, 529 U.S. at 412-13—the First DCA's rejection of McWhorter's federal due process claim was not "contrary to" clearly established federal law.[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the denial of relief by the state court "was not contrary to or an unreasonable application of clearly established federal law."); *Dombrowski v. Mingo*, 543 F.3d 1270, 1274 (11th Cir. 2008) ("[W]hen no Supreme Court precedent is on point, . . . a state court's conclusion cannot be contrary to clearly established Federal law as determined by the U.S. Supreme Court.'" (internal quotation marks and citation omitted)); *Himes v. Sec'y, Fla. Dep't of Corr.*, 690 F. App'x 640 (11th Cir. 2017) ("The Supreme Court has never held that the denial of a motion for continuance to secure an alibi witness amounts to a due process violation. As a result, the Florida appellate court's summary affirmance of the trial court's denial of

---

[9] Again, McWhorter's counseled petition does not identify the "clearly established federal law" that governs his federal due process claim. The only Supreme Court cases he identifies are *Sherman* and *Sorrells*. But as discussed above, those cases clearly establish the federal statutory defense of entrapment. A claim of entrapment is different from a federal due process claim focused on law enforcement's conduct irrespective of the defendant's predisposition.

Petitioner's motion for continuance cannot be contrary to clearly established Supreme Court precedent.").

And because the Supreme Court's cases "give no clear answer to the question presented, let alone one in [McWhorter's] favor, it cannot be said that the state court unreasonably applied clearly established federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (internal quotation marks omitted); *see also Schriro*, 550 U.S. at 478 (The Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("[I]n the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, [a habeas court] cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.");

Even if the Supreme Court's statement in *Russell* could be construed as clearly establishing a standard governing due process claims of outrageous government conduct, the standard is a general one. Thus, the First DCA had "more leeway" in denying McWhorter's due process claim. *See Evans v. Sec'y, Dep't of Corr.*, 703 F.3d at 1316, 1326 (11th Cir. 2013) (explaining that the more general the rule announced by the supreme Court, the "more leeway courts have in reaching outcomes in case-by-case determination." (quotation omitted)).

Giving the First DCA that leeway, a fairminded jurist reviewing the evidence in this case could concur in the First DCA's conclusion that there was no outrageous government conduct that would implicate the Due Process Clause of the United States Constitution. Because "it is not clear that the [state court] erred at all, much less erred so transparently that no fairminded jurist could agree with that court's decision," *Bobby v. Dixon*, 565 U.S. 23, 24 (2011), McWhorter is not entitled to habeas relief. *See, e.g., Davis v. Ayala*, 576 U.S. 257, 269-70 (2015) (confirming that "a state-court decision is not unreasonable if fairminded jurists could disagree on its correctness" (internal quotation marks and citations omitted)).

For all of the reasons set forth above, McWhorter is not entitled to habeas relief on Ground One.[10]

**Ground Two**       **"The state trial court erred by denying Petitioner McWhorter's motion for a mistrial after the prosecutor played a recording that referenced Petitioner McWhorter's fiancée and children." Doc. 5 at 19.**

McWhorter's second claim alleges that prior to his first trial in 2014, he filed the following motion: "Defendant's Amended Unopposed First Motion in Limine to Exclude Evidence." Doc. 5 at 19; *see also* Doc. 9, Ex. 3 (Mot.). McWhorter's motion

---

[10] Although McWhorter's counseled petition also asserts that "the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record," Doc. 5 at 18, he does not identify any state-court factual finding that he disputes.

sought "to exclude all reference to the defendant's fiancée or children." Ex. 3 at 2. McWhorter alleges, and the State agrees, that this first motion in limine was unopposed and that at McWhorter's first trial in 2014, the State did not mention (or introduce any evidence mentioning) McWhorter's fiancée or children. Doc. 5 at 19; Doc. 9 at 2 & n.2. McWhorter does not allege that there was a ruling on the motion. The State maintains that the motion was "apparently never ruled upon." Doc. 9 at 2.

At McWhorter's second trial in 2017, the State played the video recording of Investigator Varble's interview of McWhorter. Ex. 9 at 71-90. Defense counsel stipulated to the admission of the videorecording. *Id*. at 71.

During the interview, McWhorter made the following references to his fiancée and children:

> MR. MCWHORTER:  . . . My life is going to go to hell after what happened. First I lost my job, now this.
>
> INVESTIGATOR GEREG [now Varble]:  Are you working anywhere right now?
>
> MR. MCWHORTER:  No, I lost my job at Gretna Police Department. I was an active officer.
>
> INVESTIGATOR GEREG:  What happened with that?
>
> MR. MCWHORTER:  Me and my fiancée got into it while I was on duty. Because we were going to get married and I backed out of the wedding. And emotions were high and it just went to hell. I already knew my life was gonna fucking (inaudible) –
>
> INVESTIGATOR GEREG:  Are you back with her?

MR. MCWHORTER:  We have triplets now.

INVESTIGATOR GEREG:  Triplets? Where is she? Does she live with you?

MR. MCWHORTER:  No. She's at home.

INVESTIGATOR GEREG:  Where is home? Here in Tallahassee?

MR. MCWHORTER:  No. It's over in Gretna.

INVESTIGATOR GEREG:  So you guys stayed together even after you lost your job over that?

MR. MCWHORTER:  It's not so much we stayed together. I'm there for my children.

INVESTIGATOR GEREG:  Oh, okay. I didn't know if you guys were officially back together.

MR. MCWHORTER:  No. But she's going to fucking walk out on me. It's funny, I was talking to my mom this morning before she left to go to Colorado, and I was telling her I would never go to jail. Today's just been one of those days.

Ex. 9 at 83-84.

After the videotape was played and the prosecutor had concluded her questioning of Investigator Varble, defense counsel moved for a mistrial:

MR. PRINCE [Defense Counsel]: Your Honor, I didn't want to contemporaneously object to draw attention, but there was previously a stipulated motion in limine to preclude any mention of the fact that the defendant had children. I would move at this time for a mistrial on the basis that that motion in limine was violated and the defendant has been unduly prejudiced in a manner that cannot be corrected at this point.

MS. SCOTT [Prosecutor]: I have two questions. I couldn't hear what the motion in limine was.

MR. PRINCE: There was a stipulated motion in limine that the fact that he had children wasn't to be mentioned.

MS. SCOTT: That the defendant had children?

Well, that was at the last trial. That was a hung Jury. My understanding of the law is that once it's a hung jury it's a brand new trial. All of the issues are open again. This defense hasn't filed a motion in limine for anything in this case, that I'm aware of that has been ruled on.

So we're on a new page. Everything without a new motion in limine would be admissible that's not already deemed irrelevant or prejudicial.

MR. PRINCE: I mean, that's not the law at all. There was a prior court ruling –

THE COURT: That's the law.

MR. PRINCE: That's not the law at all. There was a prior court ruling regarding the admissibility of certain evidence, and it was agreed to by the State. Even if they could make the suggestion I would have needed to move for it again, I wouldn't think I would need to based on their prior stipulation. My position, though, is that another motion is not necessary. There was a prior court ruling and that ruling's been violated.

MS. SCOTT: And if that was a stipulation, I don't know if I'd actually call that a ruling. I'm no longer stipulating to that.

I still hold that I know previously there was a motion to dismiss that was filed that was reheard because both parties decided and agreed that the law is, once a trial has been tried, they are open to new issues when there's a new judge on the case. So they were able to rehear the

motion to dismiss, which was subsequently denied, and that was stipulated to by defense.

So I think that both parties have agreed that is, in fact, what the law is. I have not agreed to it as the new prosecutor on this case. And it's a new case. Everything is back open for discussion.

Even if the court finds that there was a prior ruling, I don't think that there's any error in talking about whether or not his children -- I think it's important for purposes of impeachment, because the defendant says in his text messages that he's not ready to have kids yet. So he's lying to this person he's talking to.

So I think either way it should come in.

MR. PRINCE: If they wanted to make the argument that it was improper impeachment, they should have done that before they admitted it. Nobody agreed –

THE COURT : You started from scratch when you come in here . Your motion is denied.

MR. PRINCE: Yes, sir.

Ex. 9 at 92-94.

On direct appeal, McWhorter claimed that the trial court "erred" when it denied his motion for mistrial. Ex. 12. McWhorter's counseled brief cited exclusively to state-law cases to argue that the evidence was irrelevant, and that a mistrial was necessary to ensure a fair trial. *Id*. at 31-32. In his final sentence, McWhorter stated: "The trial court's erroneous ruling resulted in a violation of Appellant McWhorter's constitutional right to a fair trial. *See* U.S. Const. amends.

V & XIV; art. I, § 9, Fla. Const." *Id*. at 32. The First DCA summarily affirmed without explanation. Ex. 15.

### A.    McWhorter Is Not Entitled to Habeas Relief Because His Claim Raises a Purely State-Law Issue

As in state court, McWhorter's claim here raises purely state-law issues. He argues that his relationship status and the fact that he had children were irrelevant under Florida state law, and that exposing the jury to such information was "highly prejudicial." Doc. 5 at 20. He also maintains that the State's prior stipulation carried forward into his second trial. *Id*. at 21. McWhorter argues that he satisfied Florida's standard for a mistrial, and that the trial court erred by denying his motion. *Id*. at 21. McWhorter's sole mention of the Constitution is in his concluding statement: "The state courts' erroneous ruling resulted in Petitioner McWhorter being denied his constitutional right to a fair trial. *See* U.S. Const. amends. V & XIV." Doc. 5 at 21.

McWhorter's counseled petition does not adequately present a federal due process claim. McWhorter does not label his claim as a federal constitutional claim. McWhorter does not so much as mention a federal due process standard, much less identify it and apply it to the facts of his claim. His analysis is based exclusively on state law. Because McWhorter's petition does not adequately present a claim that the admission of his comments violated the Due Process Clause of the United States Constitution, Ground Two provides no basis for federal habeas relief.

**B.    Even Construing McWhorter's Claim as Pleading a Federal Due Process Violation, He Still Is Not Entitled to Habeas Relief**

Even assuming, without deciding, that McWhorter's single citation to the United States Constitution adequately presents a federal claim, and even further assuming to McWhorter's benefit that his direct appeal brief properly exhausted a federal due process claim, the First DCA's summary affirmance is considered an "adjudication on the merits" of the claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99, 100. To obtain habeas relief, McWhorter must demonstrate that the First DCA's rejection of his claim was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).[11]

The state court's rejection of McWhorter's federal due process claim was not contrary to, or an unreasonable application of clearly established federal law. No decision of the Supreme Court suggests that admitting a defendant's comments—of the type and under the circumstances present here—is unconstitutional. McWhorter does not identify such a case, and the undersigned has not found one. "[I]it is not an unreasonable application of clearly established Federal law for a state court to

---

[11] As with Ground One, although McWhorter's counseled petition also asserts that "the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence contained in the state court record," Doc. 5 at 21, he does not identify any state-court factual finding that he disputes. He disputes only the state courts' legal conclusions.

decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted); *Wright*, 552 U.S. at 126; *Schriro*, 550 U.S. at 478; *Carey*, 549 U.S. at 77.

McWhorter is not entitled to habeas relief on Ground Two.

## IV. A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017)

(quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The amended petition for writ of habeas corpus, Doc. 5, challenging the judgment of conviction and sentence in *State of Florida v. Ladarien McWhorter*, Leon County Circuit Court Case No. 2012-CF-2221, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Pensacola, Florida, this 24th day of June, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**